CASE 52—PETITION EQUITY—NOVEMBER 12.

# Ryan, &c., v. Morrill & Co.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. THE RECEIVER OF A FUND, HAVING LOANED IT TO A FIRM OF WHICH HE WAS A MEMBER, a repayment by the firm to him will not exonerate the other members of the firm, he having subsequently converted the funds to his own use. He will not be allowed to hold the fund in one hand as a member of the firm, and in the other as receiver of the court. Each member of the firm should be regarded as holding the money in trust, to be discharged by again placing it under the control of the court, that it may be distributed to those entitled to receive it.

2. POWER OF RECEIVER TO LOAN MONEY.—In this case the receiver had no authority, express or implied, to loan the money; but if

Ryan, &c., v. Morrill & Co.

he had been invested with such a general power, it would have been a violation of the trust for him to loan the money to himself or to a firm of which he was a member.

GOODLOE AND ROBERTS AND JAMES S. PIRTLE FOR APPELLANTS.

1. When a man occupies the dual position that Morrill did, he can not make a payment without separating the money from his own. Therefore, the fund which was misappropriated by J. W. Morrill & Co. has, to the extent of $3,900, never been replaced.

2. So soon as the firm of J. W. Morrill & Co. knew of the breach of trust by Morrill, the receiver, they became indebted to the *cestui que trust*, and this debt could only be discharged by actually bringing the money into court, and putting it into the actual custody of the court, or by paying it to the *cestui que trust*. (Collyer on Partnership, section 456; *Ex parte* Watson, 2 Vesey & Beames, 414; Smith v. Jameson, 5 Tenn. Rep., 601; Hutchison v. Smith, 7 Paige, 26; Perry on Trusts, section 808.)

3. A receiver has no power other than the power granted by the court, and all persons dealing with him must see to it that the orders of the court authorize such dealing. (Kerr on Receivers, page 207; *Ibid.*, note 1 to chapter 11, page 196.)

GEO. B. EASTIN FOR APPELLEES.

1. If a partner, in the course of a transaction *outside of the business of the firm* obtains money and misapplies it, the firm is not then liable to make good the loss; and a fraud committed by a partner while acting *on his own separate account* is not imputable to the firm. nor can the firm be charged with any of its consequences. (Lindley on Partnership, volume 1, page 302, 4th ed.)

2. There was a complete separation of the money paid over to Morrill in settlement of his receiver's account, and a complete transmission of the fund from one to another.

3. It is established by the cases cited for appellants that a party borrowing trust money wrongfully *may* be treated as the debtor of the *cestui que trust*, at any time before he has actually repaid the money to the trustee, and may be required to pay it directly to the beneficiary, if the latter should so elect; but no case can be found which recognizes any liability on the part of the borrower *after the money has been paid back, in good faith and without notice*, to the trustee from whom it was borrowed. (Collyer on Partnership, section 571; Perry on Trusts, section 808; Sheridan v. Joyce, 7 Irish Eq. Rep., 118; Landon v. Weston, Jurist, N. S., volume 2, page 58; Hutchison v. Smith, 7 Paige, 26; *Ex parte* Watson, 2 Vesey & Beames, 414; Smith v. Jameson, 5 Tenn. Rep., 601.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The mercantile firm of J. W. Morrill & Co.,. while engaged in business in the city of Louisville,. was composed of W. W. Smith and J. W. Morrill.. Smith resided in the city of New Orleans, and Mor-- rill had the supervision and control of the firm in. Louisville. The latter furnished or was to furnish, under the contract, but a small part of the capital, and acquired an interest in the net profits of the. business when those profits should exceed "annually the sum of $7,200."

The conduct of the firm's business was intrusted. entirely to the control of J. W. Morrill.

In July, 1881, Morrill was appointed receiver by the Louisville Chancery Court in an action insti- tuted for the purpose of settling a partnership under the style of J. H. Ryan & Co.

A large amount of money came into the hands. of Morrill as receiver, to be distributed by him in that case as directed by the court, the greater part. of which he accounted for; but when he made a settlement of his accounts it was ascertained that he had failed to account for $5,200 of the money intrusted to his keeping.

When appointed receiver he was required by an. order of court "to deposit all the money which. comes to his hands as such in the Kentucky Na- tional Bank at Louisville, Kentucky, subject to his order as the receiver." This order was made at the instance of Morrill; and under a further order of the court he was required to sell and dispose of the stock of J. H. Ryan & Co., and if nec—

essary to enable him to sell the stock on hand, he could replenish the old stock, etc.

It seems that after Morrill had been appointed receiver, and when the money of the firm of J. H. Ryan & Co. to a large amount had come to his hands, $21,675 of this money found its way into the firm of J. W. Morrill & Co., and was used by Morrill for the purposes of that partnership, a fact, as the record demonstrates, well known to the appellee Smith, the co-partner of Morrill, the former then being in New Orleans. This sum of money, or the most of it, was drawn from the bank by Morrill, and used as a part of the capital stock of the firm of J. W. Morrill & Co., and an account opened on the books of that firm between J. W. Morrill, the receiver, and J. W. Morrill & Co.

J. W. Morrill checked out this money loaned the firm from time to time by checks payable to bearer, and sometimes to J. W. Morrill, until J. W. Morrill had withdrawn from the firm of J. W. Morrill & Co. the whole of the $21,675.

All of this sum he paid out as receiver under the orders of the court in the case of J. H. Ryan & Co., except the sum of $3,900, and this sum was misapplied by Morrill or converted by him to his own use.

The appellees, William Watson, executor, and others entitled to this fund, instituted the present action against the firm of J. W. Morrill & Co. to recover the $3,900 converted by Morrill.

It is insisted by the appellants that the firm of J. W. Morrill & Co. is liable for this money unaccounted

for by J. W. Morrill, and the Chancellor below having adjudged against them, they have brought the case to this court.

The receiver, J. W. Morrill, was not authorized by an order of court or by virtue of his office to loan this money out, and in doing so was guilty of a breach of official duty; but having loaned the money out, a voluntary repayment to him, or its collection by him under the regular process of the law, under ordinary circumstances would again reinvest him with its control as receiver, and release the borrower from responsibility. Trustees are generally required to execute bond for the faithful discharge of their duties, and where there is no collusion or fraud between the borrower and the trustee, the former should not be held responsible for the trust property when he has repaid to the trustee the trust fund, although the trustee thereafter. converts it to his own use.

A different result would seem to have been reached in a case cited or given by Mr. Perry in his work on Trusts. The case stated is: "If trustees suffer the trust property to pass to A by a breach of trust, and A afterwards passes the property back to the trustees, would the receipt of the trustees be a discharge of A, so that he could not be called on to account for the property if the trustees misapplied it? If the property comes back to the trustees in specie, so that it is exactly as if it had never passed out of their hands, it would seem that their grantee should not be further responsible; but if the property has been converted, and comes back in the form

of payment, it would seem that the receipt of the trustees would not indemnify the person who has knowingly dealt with the property by aiding in committing a breach of trust." (2 Perry on Trusts, section 808.)

In the case referred to as sustaining the text, it appears that, after the breach of the trust, the beneficiary notified the creditor not to pay the money to the trustee. This the creditor disregarded, and having paid the money, was held responsible. It may be, and no doubt is, a correct rule applicable to trusts, that when the trust property is converted by the trustee and a third person, in violation of the trust, that indemnity in money to the trustee or the beneficiary for the loss sustained by the party aiding in the conversion would not protect him if in a condition to produce the thing in kind. Such a question, however, is not presented in this case, and for that reason is not necessary to be determined.

The facts of this record render it entirely dissimilar to any of the cases relied on by either side. Here the receiver of the fund loans the money to a mercantile firm, of which he is a member, without an order of court, and in the absence of any authority, express or implied, to make the loan. Both partners, with a knowledge of the trust, use the money as capital stock in the firm business, and when unaccounted for, the only response is, that the money was repaid to one of the members of the firm, and by him converted to his own use; the one partner attempting to exempt himself from liability

by showing that the firm has accounted for the fund by paying the money to his co-partner.

It distinctly appears that Morrill, the receiver, loaned the money to himself and M. W. Smith, the two constituting the firm of J. W. Morrill & Co. The firm borrowing the money, or using it, each became bound for the debt, although creating the liability as partners, and upon this state of fact it is maintained that the payment of the money by the one obligor to the other releases the firm and the solvent obligor from all responsibility. That the firm of J. W. Morrill & Co. was liable for this trust fund when loaned to the firm will not be questioned; if so, how can a payment by the firm to one of its members, who applies the money to his own use, relieve the firm from responsibility?

It would have been in violation of the trust, where the general power to loan the money was authorized, for the trustee to loan it to himself, or to a firm of which he was a member, and when making such a loan, the dual relation that he occupies as receiver and borrower will not protect the firm from liability, although it may clearly appear that the money has been repaid by the firm to him. He will not be allowed to hold the fund in the one hand as a member of the firm, and in the other as receiver of the court.

"If the trustee is a member of a firm, and the trust fund is invested in the business of the partnership, the firm must account." (Perry on Trusts, volume 2, section 46, 3d edition.)

"Nor can trustees loan money to a partnership

of which they are members." (Perry on Trusts, volume 1, page 573,. 3d edition.)

It may be argued, which is undoubtedly the case, that this principle laid down in the text-books arises where the question made is, whether the liability is on the firm or with the individual partner who makes the loan.

So the question here is, must the *cestui que trust* look to the firm who borrowed and used the money, or to the recusant trustee who, being a member of the firm, has had the money repaid him, and failed to account for it to those entitled.

The facts show a borrowing by the firm of the trustee, the latter becoming bound as one of the firm for the money, and when the trust fund is lost, the one equally bound with the other has been released by the judgment below, because of the application by one of the partners of the money to his own use. In other words, the payment by the one partner to the other destroys the partnership liability.

The firm had voluntarily assumed to control the trust fund, and placed themselves in a condition where there was no escape from liability, if either the firm or one of its members failed to account. They were jointly and severally liable for this money, and should be treated with reference to the production of the fund as if the money had been loaned the firm under an order of the court. When using the money for the purposes of the partnership, the firm and each member of the firm should be regarded as holding the money in trust,

to be discharged by again placing it under the control of the court, that it may be distributed to those entitled to' receive it.

Those who undertake to speculate or trade with trust funds in conjunction with the trustee, and with a knowledge of the trust, should, to the extent of the funds used, be held to the same responsibility as the trustee, and will be required to see that the fund used is paid over by the recusant trustee that it may be applied to the purposes. of the trust. To relieve the appellee or the firm from responsibility in such a case as this, would be to invite faithless trustees to engage in business. or speculation with others upon the credit of the trust property, making it bear the burden of the loss, if any, while the profits, if made, are enjoyed by the intermeddler to the exclusion of the beneficiaries, unless by the skill of a detective it is ascertained that such profits have been realized from the use of the trust fund. Those controlling the fund. under such circumstances would be careful to make known the loss, and equally as careful to conceal the profits. A court of equity will not hesitate long before saying that the beneficiaries must have some other remedy than a recovery against the insolvent fiduciary. The firm is liable for so much of this fund, with interest from the time of conversion, as Morrill himself admits was appropriated to his own use, and such should have been the judgment below.

Judgment reversed, and cause remanded with directions to enter a judgment as herein directed, and for proceedings consistent with this opinion.